UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PANTROL, INC., a Washington corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>ELTEK VALERE, INC., a Delaware for-profit corporation; ERICSSON, INC., a Delaware for-profit corporation,<br><br>        Defendants.<br>_____ | NO. 12-CV-158 -JLQ<br><br>ORDER DENYING MOTION TO DISMISS OR TRANSFER VENUE |

     Before the court is Defendant Eltek, Inc's ("Eltek") Motion to Dismiss under Federal Rule 12(b)(3) or in the alternative, Motion to Transfer Venue Pursuant to 28 U.S.C. s. 1404(a)(ECF No. 4). Co-Defendant Ericsson, Inc ("Ericsson") filed a Motion to Join in Eltek's Motion, asking the court to grant it the same relief it accords Eltek, so that all related claims will be tried before a single tribunal. Plaintiff, Pantrol, Inc. ("Pantrol"), responded in opposition (ECF No. 13).

     This is a breach of contract case whereby Plaintiff claims Defendant Eltek failed to pay it for more than 2,800 "Rack Mounts" it produced pursuant to the purchase orders of Eltek. ECF No. 1 at 1. Plaintiff further contends Defendant Ericsson had knowledge of the contract and by its actions has tortiously interfered with Plaintiff's business expectancy and contracts, and that both Defendants have conspired to prevent payment in order to destroy the small company. Eltek contends that a forum selection clause in its General Purchase Agreement,

ORDER – 1

incorporated by reference in small print on its purchase orders, is binding, rendering the proper venue for courts in Delaware. Pantrol argues the forum selection clause is part of an invalid unenforceable agreement, and that its enforcement would violate due process.

For the reasons set forth below, the court denies the Defendant's Motion.

## I. BACKGROUND

The background facts are undisputed. An evidentiary hearing is unnecessary.

The Plaintiff, Pantrol, Inc., is a small Spokane, Washington corporation manufacturing telecom equipment for wireless carriers. Both Defendants are multi-national corporations, operating around the world, headquartered in Texas, who have had a business relationship for over twenty years. Defendant Eltek is a Delaware corporation with its principal executive offices in Richardson, Texas. Eltek is a provider of power solutions for telecommunication networks. Defendant Ericsson is also a Delaware corporation with its principal executive offices in Plano, Texas.

In March 2010, Ericsson contacted Eltek to request assistance in obtaining a large number of power distribution units or "Rack Mounts," a unique product for insertion into an Ericsson LTC Cabinet. An Eltek employee located in Seattle, subsequently contacted Pantrol asking it to design, build and price the requested Rack Mount, which would eventually be sold to fulfill Ericsson's order. Eltek's local Spokane employee, Mike Warren, visited the Pantrol facility and sat in Pantrol's offices during conference calls with Eltek's Texas corporate offices. After several days of discussions, Pantrol agreed to provide the Rack Mounts, under intense pressure to begin performance immediately. Pantrol was asked by Eltek to design and build a prototype within only one week and to be prepared to ship 500 units within fourteen days.

The tight turnaround was unprecedented for Pantrol. The company worked "feverishly" "around the clock" and "called in numerous favors with our suppliers." ECF No. 14. Pantrol CEO, Jim Kucera, states he spent the next two weeks contacting Pantrol suppliers and

ORDER – 2

subcontractors to obtain the best possible prices and fast turnarounds to meet Eltek's demands.

On March 31, 2010, Eltek submitted a purchase order to Pantrol for 100 Rack Mounts. At the bottom of the content of the purchase order, in small font, it sets forth five "Important Purchase Order Notes," which included these items:

> 1. This purchase order is subject to Eltek Energy, Terms and Conditions of purchase, which are available on request.
> 2. Eltek Valere Purchase Order Number, Part Number, and Quantity must be quoted on all invoices, packing list. advised/delivery notes, acknowledgments, Outside of the Shipment Carton, communications, etc.
> 3. Eltek's purchase orders must be acknowledged to the purchasing department within 2 days of receipt.
> 4. All products/services for Eltek Valere must be produced in accordance to the latest Eltek Valere drawing and or document identified on the Purchase Order.
> 5. All calibration services must be in compliance to the Eltek Valere Calibration Requirements Documents, US_INS_108.Issue 1.

ECF No. 14, Ex. A at 11. It is undisputed the referenced "Terms and Conditions" in item number one were not attached, nor discussed, nor negotiated, nor read by Eltek until a dispute arose between Eltek and Pantrol one and half years later.

Between March 31, 2010 and March 2011, Eltek submitted 80 purchase orders with similar language. Pantrol fulfilled the orders, shipping approximately 8,000 Rack Mounts. The approximate value of the shipments was over 2 million dollars, over 25% of the company's annual sales.

Pantrol CEO, Jim Kucera, states in his Declaration that neither he nor any other employee "noticed the small print contained on the Eltek purchase order." Kucera does not deny having seen the purchase orders, he states that they "simply read the quantity ordered and began producing the requested Rack Mounts as quickly as possible." ECF No. 14 at 4.

In May 2011, Ericsson cancelled its orders with Eltek. On May 6, 2011, Eltek informed Pantrol to cancel extant purchase orders (orders between February 21, 2011 and March 29, 2011) which amounted to approximately 2800 Rack Mounts (at $290.00 each). At that point in time, all of the component parts necessary to complete the orders had been

ORDER – 3

purchased by Pantrol.

It was not until a dispute arose over payment for the outstanding orders, that Pantrol's CEO was asked by his attorney to ask Eltek for a copy of the "Terms and Conditions" eluded to on the purchase orders. On October 5, 2011, Pantrol requested such, and Eltek supplied a generic form document entitled "General Purchase Agreement Rev. 02." The cover page title to this document is generic: "Purchasing agreement between Eltek Valere, Inc. And Its associated companies (Buyer) and xxxxxx (Seller)." The eight-page document contains 27 different sections including standard terms regarding: purchase orders, delivery of products, documentation and marking, quality assurance, proprietary rights, price and payment, inspection, variation, suspension, cancellation, guarantees, defects, products liability, termination, force majeure, insurance, ownership rights, liability, export controls, health and safety, marketing, assignments, law disputes, and validity.

Section 27 with the heading "Validity" states:

> This agreement is valid from the date of its signing by both contract partners and shall continue to be valid until it is terminated by one or other of the partners. Both parties have a mutual twelve (12) month termination period.

There are blanks at the bottom of the document for signatures of Eltek purchasing manager, Michael Chen, and for the "Seller." It is undisputed the General Purchasing Agreement was never signed by Eltek or Pantrol. It is also undisputed, there was no discussion or negotiation regarding any of its terms.

Section 26 titled "Law Disputes" provides as follows:

> 26 Law Disputes
> 26.1 This Agreement shall be governed by and interpreted in accordance with State Law of Delaware, USA.
> 26.2 The Parties accept State Law of Delaware, USA as their legal venue for any disputes arising out of the Agreement.

ECF No. 6 at 14.

In January 2012, Ericsson determined it would not require any additional Rack Mounts. Eltek informed Pantrol to cancel the existing orders in their entirety. On February

9, 2012, Pantrol filed suit in Spokane County Superior Court against Eltek and Ericsson based upon "the failure of Eltek to pay Pantrol for more than 2,800" Rack Mounts. ECF No. 1 at 1. Pantrol alleged that 1) Eltek breached its contract by failing to pay (claim 1); 2) Ericsson had knowledge of the contract and by its actions tortiously interfered with Pantrol's business expectancy and contracts (claim 2); and 3) Eltek and Ericsson conspired to prevent payment and to deceive Pantrol in order "to destroy" the small company to avoid paying the amounts due (claim 3 for "civil conspiracy"). ECF No. 1.

On March 15, 2012, Eltek removed the case from Spokane County Superior Court to this court. On March 22, 2012, Eltek filed a motion requesting the court to dismiss, or in the alternative, transfer the case to Delaware, based upon the forum selection clause contained in its General Purchase Agreement Rev. 02. Plaintiff contends the forum selection clause is unenforceable.

**II.    DISCUSSION**

**A.    Fed.R.Civ.P. 12(b)(3) Legal Standard**

As an initial matter, 28 U.S.C. § 1441(a), not 28 U.S.C. § 1391 governs venue in removed cases. Under the removal statute, venue is proper if removal is to the district in which the state action was pending and the federal court has jurisdiction. This is true regardless of whether venue was proper in the state court to begin with. Despite the fact the statutory venue requirements of § 1441(a) are met, in the Ninth Circuit, a defendant may still seek dismissal on the basis of venue, where a party can establish a contractual basis for a different forum. *See e,g, Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865 (9th Cir. 1991) (affirming the dismissal of a removed case based on improper venue under a forum selection clause).

A forum selection clause is grounds for a Federal Rule of Civil Procedure 12(b)(3) motion to dismiss for improper venue. *See Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). In considering such a motion, the court may consider facts outside the

ORDER – 5

pleadings and need not accept the pleadings as true. *See id.* However, the court must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004). In deciding a Rule 12(b)(3) motion, the court has the discretion to dismiss the case "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." See 28 U.S.C. § 1406(a).

Federal law governs the interpretation and enforcement of forum selection clauses. *Manetti–Farrow, Inc. v. Gucci America, Inc*., 858 F.2d 509, 513 (9th Cir. 1988). State law, however, governs contract formation and the terms contained therein. *Lowden v. T–Mobile USA, Inc*., 512 F.3d 1213, 1217 (9th Cir. 2008). Both parties rely upon Washington contract law and neither party contends a conflict of law analysis is necessary.

There are essentially two primary questions facing the court: 1) whether the forum selection clause is part of the parties' agreement and, if so, 2) whether the clause is valid and requires dismissal or transfer.

**B.     Incorporation by Reference**

*1.     Existence of a Contract*

Eltek contends the terms and conditions of its General Purchasing Agreement were incorporated by reference in to its agreement with Pantrol pursuant to the language contained within their purchase orders. Pantrol and Eltek do not dispute that a valid contract was formed during their exchanges in March 2010. Indeed, Pantrol sues Eltek for breach of contract based at least in part, upon the purchase orders. The Complaint alleges "Pantrol entered into a contract with Eltek....Eltek has refused to pay for the purchase orders." ECF No. 1 at 6. After receiving the purchase order from Eltek, Pantrol began to manufacture and supply the Rack Mounts to Eltek. No party contends that 1) the purchase orders have no bearing on the terms of the parties agreement; or that 2) the purchase orders themselves were invalid; or that 3) the General Purchase Agreement was an independent binding agreement.

ORDER – 6

As the parties do not dispute the fact that the purchase orders were at least a part of their agreement, the question becomes whether the terms of the General Purchasing Agreement - specifically the forum selection clause -- was properly incorporated by reference into their agreement by the language contained in the purchase orders.

*2.     Doctrine of Incorporation Legal Standards*

The doctrine of incorporation allows a document or provision to be read into an agreement. 11 Richard A. Lord, Williston on Contracts § 30:25 (4th ed. 2011). It is well settled that terms of another unread, unsigned agreement can be incorporated by reference so long as the unsigned document is identified and readily available for inspection. *See e.g., Western Washington Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.*, 102 Wash. App. 488, 7 P.3d 861 (Div. 2, 2000), review denied, 143 Wash. 2d 1003, 21 P.3d 292 (2001)(quoting Williston and finding extrinsic evidence indicated that one of the parties was aware of the incorporated terms prior to signing the agreement); *Wattenbarger v. A.G. Edwards & Sons, Inc.*, 150 Idaho 308, 320, 246 P.3d 961, 973 (2010); *Cunha v. Ward Foods, Inc.*, 804 F.2d 1418, 1428 (9th Cir.1986) ("When a document incorporates outside material by reference, the subject matter to which it refers becomes a part of the incorporating document just as if it were set out in full."). There is no contention or evidence that the incorporated document was not readily available for Pantrol's review. Pantrol did not ask for it until this dispute arose.

Pantrol contends, however, that the General Purchase Agreement was never identified in the purchase orders. In order for a document to be incorporated into an agreement, the contract must make "clear reference to the document" and "describe[] it in such terms that its identity may be ascertained beyond doubt..." 11 Richard A. Lord, Williston on Contracts § 30:25 (4th ed. 2011). Additionally, in order to uphold the validity of terms incorporated by reference, "it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms..." *Id.*

ORDER – 7

*3. Clear Reference to the Document*

Courts will consider the language itself, as well as its location, size and placement, in considering whether it was sufficient to put a party on notice. Pantrol contends that the language of incorporation in Eltek's purchase orders is in small font and vague. Pantrol's reference to the small font size suggests this was the reason it was not alerted it to its important content. The font size, though small, meets a practical standard of reasonable communication – indeed nearly the entire document appears to utilize the same small font size.

More important to the issue of clarity than font size, however, is that the heading under which the incorporation language is found is: "Important Purchase Order *Notes*." The reference to "*Notes*" does not clearly alert the reader to its alleged incorporation. Moreover, the statement within the purchase order asserts that Eltek incorporates all "Eltek Energy, Terms and Conditions." "Terms and Conditions" is common terminology and there is no direct reference to the particular document Eltek now claims it refers to, "General Purchase Agreement Rev. 02." The statement of incorporation is neither clear or specific, and would not unequivocally alert its reader to the existence of "General Purchase Agreement Rev. 02." *See Atlantic Mut. Ins. Co. v. Metron Eng'g & Const. Co.*, 83 F.3d 897, 900 (7th Cir.1996) ("General Conditions of the Contract for Construction" was not incorporated by reference into contract that listed "contract documents" as "General, Supplementary, and other Conditions" when "Supplementary" and "other Conditions" did not exist-to do so would "necessarily be incorporating additional documents that apparently do not exist."); *Weiner v. Mercury Artists Corp.*, 284 A.D. 108, 130 N.Y.S.2d 570, 571 (N.Y.App.Div. 1954) (rejecting incorporation by reference of 207-page document into 1-page contract where reference was not clear); *PaineWebber, Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) ("While a party's failure to read a duly incorporated document will not excuse the obligation to be bound by its terms, a party will not be bound to the terms of any document unless it is

clearly identified in the agreement.").

On the other hand, the reference to "Terms and Conditions," was capitalized and indicated the document was "available upon request." Because Pantrol denies having even read this language of the purchase order, any ambiguity in the clause could not have caused any confusion or actual misunderstanding as to its meaning. The fact that Pantrol admittedly did not thoroughly read the purchase orders does not preclude the incorporation. It is a fundamental principle that a person who enters into a contract is presumed to know its terms and be bound by them. Generally, the reference to governing "Terms and Conditions, puts reasonable people on notice that they should read and know those terms. This is especially true of sophisticated business entities. *See Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 n. 10 (3rd Cir. 2003) (stating that although incorporation by reference might seem harsh at first blush where party never received an incorporated document, "[i]t is appropriate to require a merchant to exercise a level of diligence that might not be appropriate to expect of a non-merchant"). One would expect that a large supply contract (in this case 25% of Pantrol's annual business) with a national corporation would involve some sort of written purchase agreement governing the parties performance.

*4.    Knowledge and Assent to the Incorporated Terms*

An expression of assent to terms may be by words or silence (acquiescence or lack of objection), an act or inaction, or any conduct which manifests the affirmative intention of a party. Pantrol argues it never agreed to the terms of the General Purchase Agreement. ECF No. 15 at 9-10. Not only were the purchase order documents themselves never negotiated or signed, the allegedly incorporated document, the General Purchase Agreement, was never signed, never negotiated, discussed, or reviewed (until one and half years later). *Id*. Eltek contends Pantrol gave implied consent to the terms of the Purchasing Agreement by "conduct[ing] itself according to the terms of the Purchase Orders...," by fulfilling the orders of 80 purchase orders. However, the evidence of Pantrol's performance suggests that it was

ORDER – 9

acting consistently with its preexisting, apparently oral, agreement with Eltek to design and produce the Rack Mounts on an expedited schedule, and that the purchase orders provided it with the quantity to initially supply. Other than providing the stated quantity at the stated price in each purchase order, there is no evidence that Pantrol acted in any manner according to the another writing referenced on the purchase orders, or more importantly, any of the terms in the General Purchase Agreement, which it undisputedly never saw.

There is no indication that any of the important terms, including the forum selection clause, of the General Purchase Agreement were known or assented to by Pantrol. To the contrary, it is without dispute that there was never any discussion of the General Purchase Agreement until the relationship soured. Absent Pantrol's assent, the General Purchase Agreement (and its forum selection clause) was not properly incorporated by reference.

**C.     Validity of the Forum Selection Clause**

*1.     Legal Standard*

Alternatively, even if the court were to find the General Purchase Agreement was properly incorporated by reference into the parties' agreement, the forum selection clause is invalid and unenforceable. Where venue is alleged to be improper by virtue of failure to comply with a forum selection clause, the court evaluates the validity of the forum selection clause utilizing the analysis set forth by the Supreme Court in *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1 (1972). *See also Manetti–Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988); *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). "Moreover, because enforcement of a forum clause necessarily entails interpretation of the clause before it can be enforced, federal law also applies to interpretation of forum selection clauses." *Manetti–Farrow, Inc.*, 858 F.2d at 513.

Plaintiff bears a "heavy burden" in challenging the reasonableness of a forum selection clause. A freely negotiated, mandatory forum selection clause is prima facie valid and should not be set aside unless the party challenging the enforcement of such a provision can show

ORDER – 10

"that enforcement would be unreasonable or unjust, or that the clause is invalid for such reasons as fraud or overreaching." *Manetti-Farrow, Inc*., 858 F.2d at 514 (9th Cir.1988) (cite and quotations omitted).

> The Supreme Court, has construed this exception [to enforcement] narrowly. A forum selection clause is unreasonable if (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power, (2) the selected forum is so "gravely difficult and inconvenient" that the complaining party will "for all practical purposes be deprived of its day in court," or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought. To establish the unreasonableness of a forum selection clause, [Plaintiff has] the "heavy burden" of showing that trial in the chosen forum would be so difficult and inconvenient that [Plaintiff] would effectively be denied a meaningful day in court.

*Argueta*, 87 F.3d at 325 (Cites and quotations omitted); *see also, Bremen,* 407 U.S. at 10. If the forum selection clause is found to be enforceable, then any claim brought in a forum different from that selected in the forum selection clause will be dismissed for improper venue. *Argueta*, 87 F.3d at 326–327; *see also, Bremen*, 407 U.S. at 10.

*2.    Invalid Agreement*

Pantrol does not discuss the reasonableness factors which suggests it believes such analysis is unnecessary because it contends there was no valid agreement to forum in the first place and the General Purchase Agreement is unenforceable on its face. Relying on the final provision of the agreement, Pantrol contends the precondition to its validity, "its signing by both contract partners," undisputedly did not occur, and it is therefore invalid. Though it could be argued there was assent to the purchase orders, there is no evidence of such assent to the unsigned General Purchase Agreement. The General Purchase Agreement's terms requiring signature are not ambiguous. *See United Int'l Holdings. Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1223 (10th Cir. 2000) ("The documents are virtually irrelevant in their unsigned form and are insufficient to constitute binding forum selection ... provisions."). It is also undisputed that Pantrol did not sign the Purchase Orders and Eltek never required Pantrol to do so. The Purchase Orders were treated as orders by Eltek for the Rack Mounts which Pantrol proceeded to manufacture and ship to Eltek.

ORDER – 11

Eltek cites cases in its Reply (ECF No. 16 at 4) where contract terms were held enforceable even though a writing was not signed. None of the cases, however, involved enforcement of a separate document containing additional terms which required separate signatures.

*3.     Reasonableness - Rahco v. Laird Electric*

Eltek argues there is no basis to deny enforcement of the forum selection clause if measured against the reasonableness standards summarized by the Ninth Circuit in *Argueta*. It is true that Pantrol does not assert that fraud, overreaching, or a strong Washington interest would render the forum selection clause unenforceable under applicable law. Pantrol also does not allege facts which suggest that this transaction involved an overbearing seller and a powerless buyer, as opposed to an arm's-length commercial transaction between two businesses.

Pantrol's only "reasonableness" argument is found in its analogy to *Rahco Intl., Inc. v. Laird Electric, Inc.*, 502 F.Supp.2d 1118 (E.D.Wa. 2006). In *Rahco*, the late Judge McDonald refused to enforce a Washington forum selection clause contained in purchase order documents concerning work performed in Canada which were 1) never acknowledged in writing (as required by their express terms) and 2) never in fact seen by any executives. Given that the forum selection clause had not been obtained though a freely negotiated agreement and recognizing the due process concern that parties have "fair warning" a particular activity might subject them to the jurisdiction of a foreign sovereign, the court held that it would be necessarily unreasonable to enforce under the particular facts.

As Pantrol points out, like in *Rahco*, this case involves terms that neither side negotiated, discussed or signed as required for their terms to become operative. Whereas in *Rahco* the purchase orders themselves contained the forum selection clause at issue, here, Pantrol did not even receive the document containing the provision before work commenced. Distinguishing the case, Eltek notes in *Rahco* there were other documents beside the

ORDER – 12

governing the scope of work and there was no evidence the party challenging the forum selection clause had ever conducted itself at all to any of the purchase orders.

Eltek cites cruise ship passenger case *Carnival Cruise Lines v. Schute*, 499 U.S. 575, 595 (1991) to contend the fact that Pantrol "never saw it" and that Eltek never gave specific notice is not fatal to the enforcement of the forum selection clause. ECF No. 16 at 5. Eltek's reference to *Schute* is misplaced here. In *Schute*, the Court held that a forum selection clause in a cruise line's passage contract was reasonable and enforceable despite the facts that the clause was not the product of negotiation, and that respondents were physically and financially incapable of litigating in the selected forum. However, *it was conceded* in *Schute* that the plaintiffs had notice of the forum selection provision and they did not contest that it was reasonably communicated to them in three pages of fine print.

In this case, neither the forum selection clause or the General Purchase Agreement were assented to by Pantrol. The small Spokane corporation was under pressure to design and manufacture product on an unprecedented expedited schedule, when it received the first purchase order. That the purchase orders' small print "Notes" section vaguely referencing "Terms and Conditions" did not alert Pantrol's attention to a General Purchase Agreement under these circumstances is not a surprise. Pantrol was unaware of the forum selection clause and had no warning it might be haled into court in Delaware. Notably, in nearly all UCC states, a forum selection clause is a material term and the unilateral addition of such a clause is unenforceable without explicit consent from all parties to be bound. *See e.g., Tacoma Fixture Co., Inc. v. Rudd Co., Inc.,* 142 Wash.App. 547, 174 P.3d 721 (Wash.App. Div. 2, 2008). A sophisticated entity like Eltek certainly must recognize that it cannot unilaterally insert all the material terms of its standard form agreement into a transaction via a vague reference under "Notes" in the small print in its purchase orders. Even if it the General Purchase Agreement could be deemed incorporated by reference, enforcement of the forum selection clause in this case under these circumstances would be unjust. *Burger King*

ORDER – 13

*Corp. v. Rudzewicz*, 471 U.S. 462, 474 n. 14 (1985) (stating that when contractual forum selection clauses "have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process.")

## IV. CONCLUSION

The General Purchase Agreement (and its forum selection clause) was never properly incorporated by reference into the parties' agreement and is unenforeceable because it was not clearly referenced in the purchase orders and Pantrol did not assent to its terms. Moreover, enforcement of the forum selection clause in the General Purchase Agreement would be unduely harsh under these circumstances.

**Accordingly, IT IS HEREBY ORDERED:**

1. Ericsson's Joinder, filed as a Motion at ECF No. 10 is **GRANTED**.

2. Eltek and Ericsson's Motion to Dismiss (**ECF No. 4**) is **DENIED**.

3. Defendant Eltek shall file its Answer to the Complaint within **15 days** of this Order.

**IT IS SO ORDERED.** The Clerk of the Court shall enter this order and provide copies to counsel.

**DATED** this 30th day of May, 2012.

                s/ Justin L. Quackenbush
                JUSTIN L. QUACKENBUSH
                SENIOR UNITED STATES DISTRICT JUDGE